---

PEOPLE ex rel. DAMON v. FESSESDEN et al.

(Supreme Court, Appellate Division, Fourth Department. June 18, 1898.)

ELECTIONS—BALLOTS—SUFFICIENCY.

Laws 1896, c. 909, § 105, prescribes the method of voting, and declares that it shall be unlawful to make any marks on the official ballot except by placing an X in the circle above the party column for which the voter desires to cast his ballot if he desires to vote a straight ticket; otherwise in the circles opposite the name of each person to be voted for, etc. Section 110, subd. 2, provides that if, for any reason, it is impossible to determine the elector's choice for an office to be filled, his vote shall not be counted for such office, but shall be returned as a blank vote for such office. *Held,* that section 105 denoted the manner in which electors should declare their intentions, and, where there was only one ticket on the ballot and a blank column, votes cast upon which no marks whatever were made should be considered as blank votes, and should not be counted.

Appeal from special term.

Mandamus by the people, on relation of Joel G. Damon, against Ralph C. Fessesden and others, constituting the board of canvassers of the town of Gerry, etc. From an order directing a peremptory writ commanding defendants to recanvass certain ballots, and count the same for relator, defendants appeal. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

A. C. Wade, for appellants.
F. W. Stevens, for respondent.

FOLLETT, J. But one ticket—the Republican—was nominated for the annual town meeting of the town of Gerry held February 15, 1898, and consequently the official ballot contained but two columns, one headed "Republican Ticket," and the other "Blank Column." All of the candidates of the Republican ticket, except the relator, were elected, substantially without opposition. 194 ballots were cast for the office of commissioner of highways, 12 of which were rejected, and of the remainder (182) 93 were counted for Dennis Smith for the office

of commissioner of highways voted for on the blank ticket, and 89 for the relator, the candidate on the Republican ticket for said office, and Dennis Smith was declared elected to the office of commissioner of highways by a majority of four votes.    Seven of the twelve rejected ballots were not counted because there were upon them no marks of any kind, either in the circle at the head of the Republican column, in the voting space at the left of the names of the candidates in the Republican column, or by writing any name in the blank column. The other five ballots were rejected for reasons assigned by the defendants in their return, but the rejection of those ballots is not challenged by the relator in his petition, and the defendants have not been commanded by the writ of mandamus to recanvass them.

The facts in this case are undisputed, and the only question presented is:   In case an official ballot contains but two columns, one a party column, and the other a blank column, and ballots are cast not marked in any manner, are such ballots to be counted in favor of the candidates whose names appear in the party column?

Section 105 of chapter 909 of the Laws of 1896 (the Election Law) prescribes the manner by which electors shall indicate their intention to vote for persons to be chosen to fill the various offices designated on the official ballot:

"It shall not be lawful to make any mark upon the official ballot other than the cross X mark used for the purpose of voting, with a pencil having black lead, and that only in the circles or in the voting spaces to the left of the names of candidates, or to write anything thereon other than the name or names of persons not printed upon the ballot for whom the elector desires to vote in the blank column under the proper title of the office. * * * (1) If the elector desires to vote a straight ticket, that is, for each and every candidate of one party for whatever office nominated, he shall make a cross X mark in the circle above the name of the party at the head of the ticket. (2) If the elector desires to vote a split ticket, that is, for candidates of different parties, he must not make a cross X mark in the circle above the name of any party, but shall make a cross X mark in the voting space before the name of each candidate for whom he desires to vote on whatever ticket he may be. * * * If the elector desires to vote for any person whose name does not appear upon the ballot, he can so vote by writing the name with a pencil having black lead in the proper place in the blank column."

The ballot printed for the town meeting contained in the Republican column the names of candidates for all offices for which the electors at the town meeting were entitled to vote.

It is urged in behalf of the relator that a ballot cannot be rejected except in two cases:

First. When marked, torn, or defaced, as described in the following paragraph of section 105 of the election law:

"Any ballot upon which there shall be found any mark other than the cross X mark used for the purpose of voting, or a name or names written otherwise than as heretofore provided, and any ballot which shall be found to be defaced or torn, or from which there shall have been erased any device, figure, letter or word, or which shall have been marked or written upon other than by a pencil having black lead, shall be wholly void and no vote thereon shall be counted."

The seven questioned ballots were not marked, defaced, or torn, and could not be rejected under this provision.

Second. When it is impossible to determine the elector's choice, as

provided by subdivision 2 of section 110 of the election law, which is as follows:

"Subdivision 2. Intent of Electors. No. 1. If the elector marks more names than there are persons to be elected to an office, or if for any reason it is impossible to determine the elector's choice for an office to be filled, his vote shall not be counted for such office, but shall be returned as a blank vote for such office."

It was not intended by subdivision 2, just quoted, to provide that, in case it is possible to determine the elector's choice by means other than those prescribed by the statute, his ballot must be counted, but to provide that, if impossible to ascertain his choice by the marks prescribed by statute, the ballot should be regarded as a blank, which covers the case at bar, as there are no marks on these ballots denoting the intentions of the electors who cast them. To hold that these electors intended to vote for every one of the candidates on the Republican ballot, because no names were written on the blank ballot, in effect authorizes electors to declare their intentions in a manner not authorized by the statute, and permits boards of canvassers to search sources of information other than those prescribed by statute.

It is held (People v. Collin, 19 App. Div. 457, 46 N. Y. Supp. 701, affirmed 154 N. Y. 750, 49 N. E. 1102) that an elector must manifest his intent to vote for particular candidates in the mode prescribed by statute, and that, in case he desires to vote for candidates on different tickets, an X mark must be made in the "voting space" at the left of the name of the candidate for whom he desires to vote, and that in case the X mark is made at the left of the name of the candidate, and outside of the "voting space," the ballot must be rejected. In that case, as in this, it was argued that the intention of the elector was plain. It was urged that by making the X mark at the left of, instead of in, the "voting space," he clearly indicated his intention to vote for the person whose name was printed at the right of the mark; but it was held that, the intention of the elector not being denoted in the manner prescribed by the statute, the ballot must be rejected. The same rule was held in People v. Moody (Sup.) 45 N. Y. Supp. 606.

This is not an action in the nature of quo warranto, in which evidence may be taken; but it is a proceeding to compel the canvassers to discharge their statutory duties in the mode prescribed by the statute, and to resort solely to the sources and means of information prescribed by the statute. If the mode prescribed by the statute for denoting the elector's intention may be ignored, and another mode substituted, the purpose of the law,—to provide absolute secrecy for the ballot, and prevent interested persons from knowing how particular electors vote,—by providing absolute uniformity in the mode by which electors shall indicate their choice of candidates, will be destroyed, and the means frequently adopted for determining how corrupted and intimidated electors vote will not be frustrated, but advanced.

The order should be reversed, and the writ dismissed, with $50 costs in the court below and the costs of this appeal. All concur.